**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Errol B. RESNICK, Defendant-
Appellant.**

**No. 73–1320
Summary Calendar.\***

United States Court of Appeals,
Fifth Circuit.

June 4, 1973.

Rehearing and Rehearing En Banc
Denied July 12, 1973.

Certiorari Denied Nov. 5, 1973.
See 94 S.Ct. 370.

---

\* Rule 18, 5 Cir.; see Isbell Enterprises,
Inc. v. Citizens Casualty Company of New

York et al., 5 Cir., 1970, 431 F.2d 409,
Part. I.

James M. Russ, Orlando, Fla., for defendant-appellant.

John L. Briggs, U. S. Atty., Jacksonville, Fla., Kendell W. Wherry, Asst. U. S. Atty., Orlando, Fla., for plaintiff-appellee.

Before JOHN R. BROWN, Chief Judge, and DYER and SIMPSON, Circuit Judges.

JOHN R. BROWN, Chief Judge:

Appellant challenges his sentence and conviction for melting silver from United States currency in violation of 31 U. S.C.A. § 395 on various grounds. We affirm.

### Jury Selection Plan

■ Appellant, for the first time on this appeal,[1] challenges the Plan for the selection of jurors in the Middle District of Florida on the basis that it excludes a substantial segment of the community, i. e., people between the ages of 18 and 25.

■ But not every omission of potentially qualified jurors is an error of constitutional proportions. Realizing this, appellant argues that the Plan for juror selection for the Middle District of Florida also fails to satisfy the Jury Selection and Service Act of 1968, 28 U.S.C. A. §§ 1861–1871, as amended in 1972 to allow eighteen year olds to serve. The plan adopted in August 1968 by the Reviewing Panel for the Middle District of Florida provided for the periodic refilling of the master jury wheel. Appellant argues, however, that at the time of his trial in 1972 only those people who were twenty-one years of age and otherwise qualified in August of 1968 when the wheel was initially filled were included in the venire. Thus, all those under 25 were excluded.

■ We have on several occasions had to pass on whether a jury selection Plan complied with the statute or the Plan had been violated. United States

---

1. Appellant was charged on a two count indictment on March 24, 1969. His first trial resulted in a mistrial. The second was reversed because of Fourth Amendment error. *See* United States v. Resnick, 5 Cir., 1972, 455 F.2d 1127.

Of course we are not bound to consider this eleventh hour contention at all. But taking the allegation as a charge of plain error, we have entertained the argument and found it wanting.

v. Blair, 5 Cir., 1972, 470 F.2d 331; United States v. Kuhn, 5 Cir., 1971, 441 F.2d 179; United States v. Pentado, 5 Cir., 1972, 463 F.2d 355; United States v. Gooding, 5 Cir., 1973, 473 F.2d 425 [1973]; United States v. Arroyave, 5 Cir., 1973, 477 F.2d 157 [1973]. We reaffirm our pragmatic statement in *Blair, supra*: "In the Constitutional—statutory goal of a fair cross section Congress had the right to consider practical problems of administrative necessity."[2] 470 F.2d at 336. Examining the Plan in detail, we cannot say that it fails to satisfy the statute or to afford the defendant due process.

At the time the Plan was put into operation, it called for the emptying/refilling of the master jury wheel every fifth year. Thus, because of administrative considerations, persons who would become otherwise newly qualified by virtue of their twenty-first birthday after August 1968 would not be put into the master wheel until 1973 when the wheel was refilled. But as we have previously held, this is not grounds for reversal. Congress itself, when it sanctioned jury service for eighteen year olds, extended the effective date to September 1, 1973 and required refilling of the master wheels by that date. See *Blair, supra* at 336 n. 10. And we too have recognized the administrative necessity of having some stability.

We cannot hold that appellant was deprived of a fair trial by operation of this Plan.

### A Revoked Regulation

Resnick was prosecuted under the authority of 31 U.S.C.A. § 395. At the time of his indictment this section was explained by regulation. 31 C.F.R. § 82.1 (1967). By the time he was brought to trial, however, the regulation had been revoked, though a specific savings clause sought to protect pending cases.

In two separately designated points of error appellant contends that the Secretary of the Treasury (i) could not prosecute him under the authority of 31 C.F.R. § 82.1 (1967) after its revocation, because (ii) the Secretary is without authority to enact a savings provision for pending prosecutions.

These same arguments were presented by appellant in United States v. Resnick, 5 Cir., 1972, 455 F.2d 1127, 1133–1134. Pretermitting the second issue we there held:

"Here the authorizing legislation has not been repealed nor has it expired. It is the Act and not the regulation which establishes the crime and fixes the penalty. Only the administrative rule was revoked, a power lawfully delegated to the executive 'to fill up the details.' The revocation of the regulation does not bar the prosecution of the defendants in this case."

Obviously, this prior holding controls the same issue on this appeal. It is without merit.

### A Dusty Apple

Appellant next contends that it was error for the trial judge to allow government witness Alex Forrester to testify because his identity had been disclosed to government agents in Resnick's financial ledger,[3] which we previously ordered suppressed. See United States v. Resnick, 5 Cir., 1972, 455 F.2d 1127. Thus to use an outworn cliche, the identity of

---

2. We also point out here, as in *Blair*, that Congress too was aware that administrative considerations must be given their due in effectuating the rights of eighteen year olds to serve on juries. See 470 F.2d at 336 n. 10.

3. The name "Alex Forrester" is clearly printed on nearly every page of Resnick's

business expense ledger—dubbed the "Dome Book" by the parties because it was published as a book of "Legal Deductions Allowable If You Are Engaged In A Trade, Business or Profession" by the Dome Publishing Company in Providence, R.I.—as the recipient of literally hundreds of thousands of dollars in cash.

the witness was the fruit of the poisonous tree.[4]

■ Of course a witness' identity may be derived solely or principally from illegally obtained evidence and warrant a court in disallowing his testimony. Williams v. United States, 5 Cir. 1967, 382 F.2d 48, 51. See Silverthorne Lumber Co. v. United States, 1920, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319; Wong Sun v. United States, 1963, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441; Harrison v. United States, 1968, 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047; United States v. Whelan, 9 Cir., 1972, 463 F.2d 1093. But the taint of the unlawful search may be removed if there are independently sufficient "leads" by which the government may discover the identity. See Nardone v. United States, 1939, 308 U.S. 338, 60 S.Ct. 266, 84 L. Ed. 307.

The government here contends that Forrester's identity was discovered, not from his clearly printed name on virtually every page of the financial ledger, but rather from his scrawled signature on four separate air freight bills acknowledging his receipt of the shipment of several bags of coins.[5] Secret Service Agent Williamson testified that he had made an independent investigation of these air bills which predated the search which uncovered the ledger.

If we are left to our own capacity to decipher signatures other than our own we have much difficulty in accepting agent Williamson's assertion on voir dire that he learned of the identity from the air bills (Ex. 26, 63) rather than the clearly revealed, but suppressed, Dome Book. The trial court erred in allowing Forrester to testify, but accepting that contention it does not end here, as we assess the record without Forrester's testimony.

■ ■ For not every error on the part of the district court will mandate reversal. If, taking the record as a whole, the error is "harmless beyond a reasonable doubt", the conviction must be affirmed. Chapman v. California, 1967, 386 U.S. 18, 87 S.Ct. 824, 17 L. Ed.2d 705. We have made a thorough and independent examination of the entire record in the instant case and conclude that the admission of Forrester's testimony was harmless error beyond a reasonable doubt.

Forrester was a long-time friend and confidant of Resnick. His testimony indicates that he conferred with Resnick about the possibility of melting United States coins into silver bullion at a profit, and that he actually worked at the melting site for about three days and ran several errands for Resnick. But his testimony was merely cumulative.

The government introduced the testimony of several coin dealers and airline agents to establish the fact that large shipments of silver coins were made to Resnick and his agents. In addition to Forrester's testimony, it also produced the testimony of three other "false friends" of Resnick who participated in the smelting operation at Resnick's direction and who actually observed Resnick himself participating in the operation. Viewing the record in its entirety, we do not believe that the exclusion of

4. The point was preserved in this way:
   THE COURT: Mr. Russ, out of the presence of the jury, my recollection was that there was something you wanted to take up regarding witnesses.
   MR. RUSS: Well, I wanted to sort of challenge the cleanliness of some of the newly found witnesses, Your Honor. There is a suspicion that they are tainted by the—Put it this way: that because of dirty search, some of the dust has fallen off on them and consequently they fall in the area of rotten apples and poisoned fruit, or something like that.
   THE COURT: Sounds like Chief Judge Brown.

5. There are over fifty such freight bills evidencing the shipment of well over one million dollars in United States silver currency. Only four were signed by Forrester. Defendant does not challenge the fact that he received voluminous quantities of silver coin from various professional coin dealers.

Forrester's testimony would have changed the verdict in any respect.

### The Jencks Jinx

Appellant made several demands on the government for the production of prior Jencks Act, 18 U.S.C.A. § 3500 et seq., statements of Witness Forrester. Immediately after Forrester's testimony the prosecuting attorney contacted another member of his office who had interviewed Forrester on a previous occasion. He was assured that no written statements were taken.

■ There has been no suggestion on this appeal that there are in fact any prior Jencks type statements. Rather the sole contention of the appellant is that it was error for the trial court not to directly inquire of the prosecuting attorney as to the existence of prior Jencks Act statements. We find this claim most shallow. The prosecuting attorney, like defense counsel, is an officer of the court. Unless there are concrete facts or factors indicating that he has failed to comply with the mandate of the law the Judge could accept his assurances that he has. The prosecuting attorney does not have to be subjected to a third degree inquisition by the trial court.

### The Quid Pro Quo

When the government decided to retry appellant after our reversal in United States v. Resnick, 5 Cir., 1972, 455 F.2d 1127, both sides entered into plea negotiations. The Assistant United States Attorney who was handling the case agreed to recommend three year concurrent sentences on both counts of the indictment in exchange for a plea of guilty. The trial judge indicated that he would approve the bargain. But the defendant concluded that he would prefer to take his chances on a trial.

■ The trial resulted in a verdict of guilty, and the trial court then imposed two five year consecutive sentences on the two charges of the indictment. There is not the slightest suggestion

that this was in any way a reprisal by the Judge because appellant opted for a trial under a not guilty plea. Reaching to the bottom of the barrel for his last contention on appeal, appellant suggests that he should be given the fruits of an abandoned bargain—in spite of the fact that he pleaded "not guilty". To allow the imposition of the greater sentence, he argues, punishes him for exercising his Fifth and Sixth Amendment rights. Of course plea bargains are an accepted mode of resolving criminal trials, Brady v. United States, 1970, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747; North Carolina v. Alford, 1970, 400 U.S. 25, 91 S. Ct. 160, 27 L.Ed.2d 162, and defendants who plead guilty are entitled to have the sentencing court know of them and to withdraw the guilty plea if the Judge declines to accept it. Santobello v. New York, 1972, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427; Fontaine v. United States, 1973, 411 U.S. 213, 93 S.Ct. 1461, 36 L.Ed.2d 169; Johnson v. Beto, 5 Cir., 1972, 466 F.2d 478. But it stretches our credulity to think that one who declines to plead guilty with a recommended sentence acceptable to the Court should nevertheless be given the benefits of a bargain available to, but rejected by, him.

Affirmed.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

### PER CURIAM:

Resnick's Petition for Rehearing urges that his two consecutive five year sentences are constitutionally infirm under the doctrine of North Carolina v. Pearce, 1961, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656. The point that this sentence is invalid because it is harsher than the two four year concurrent sentences imposed by the Court in Resnick's second trial which we reversed in United States v. Resnick, 5 Cir. 1972, 455 F.2d 1127, was not raised in the trial court or in the briefs on appeal of this conviction.

 Nevertheless there is clearly (albeit belatedly) raised the possibility of constitutional violation in the imposition of consecutive five year confinement sentences following Resnick's last trial. We decline to consider this question until it is first passed upon by the district court. Rule 35, F.R.Crim.P., allows correction of an illegal sentence by a trial court at any time, and reduction of sentence by the trial court within 120 days of the going down of our mandate of affirmance. Without question then the issue based upon North Carolina v. Pearce may be presented to the district court upon remand.

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc (Rule 35, Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.