UNITED STATES of America,
Plaintiff, Appellee,

v.

Daniel GERARD, Defendant,
Appellant.

UNITED STATES of America,
Plaintiff, Appellee,

v.

Harold Eugene GOLDSTEIN,
Defendant, Appellant.

Nos. 72-3128, 72-3129.

United States Court of Appeals,
Ninth Circuit.

Feb. 6, 1974.

Alvin S. Michaelson (argued), Los Angeles, Cal., for appellant Gerard.

Henry Huntington Rossbacker, Los Angeles, Cal. (argued), for appellant Goldstein.

Brendan D. Lynch, Asst. U. S. Atty. (argued), William D. Keller, U. S. Atty., and Eric A. Nobles, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before ALDRICH,* DUNIWAY and SNEED, Circuit Judges.

ALDRICH, Senior Circuit Judge:

Our conclusion that there must be a new trial essentially limits our consideration in this case to one ground we find sufficient in itself—the government's coverup of its relations with its principal witness, an alleged accomplice of the defendants. The underlying facts are these. Defendants Gerard, Goldstein and DeVito were indicted on a three-count indictment in connection with counterfeit Federal Reserve notes. 18 U.S.C. §§ 2, 371, 472 and 473. All three pleaded guilty to Count I (conspiracy), but at the sentencing a problem arose and the court allowed the withdrawal of the pleas. All were then reindicted on the same counts, with a fourth count added against Gerard. DeVito pleaded guilty again on the conspiracy count, but his sentencing was postponed until after the trial of the others. The other defendants, the present appellants, went to trial, with DeVito a key witness against them. They were convicted on all counts.

Prior to trial defendants sought unsuccessfully to learn of any government promise to DeVito. We agree, at least for present purposes, that the government was not obliged to disclose in advance the possible vulnerability of its witnesses and we mention this only to show that the defendants' interest in this subject at trial could not have caught the government by surprise. With regard to the government's withholding of information at trial we will proceed in the following order. First, a statement of applicable principles; second, by way of anticipation, the government's explanation of any nondisclosure of its full dealings with DeVito, and last, what the record in fact shows.

 The basic principle is clear enough: the government is obliged to disclose pertinent material evidence favorable to the defense, and this applies not only to matters of substance, but to matters relating to the credibility of government witnesses. Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L. Ed.2d 104 (1972); Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); United States v. Hibler, 463 F. 2d 455, 460 (9th Cir. 1972); Loraine v. United States, 396 F.2d 335 (9th Cir. 1968), cert. denied 393 U.S. 933, 89 S.Ct. 292, 21 L.Ed.2d 270. There is a subsidiary principle: the government's motives in suppressing evidence may be material in determining whether a new trial is necessary. True, if the suppressed evidence is of unquestionable materiality, the government is not saved by good motives. Brady v. Maryland, 373 U.S. 83, at 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). On the other hand, when the suppressed evidence is of less obvious materiality, improper prosecutorial motives may be relevant for one of two reasons. The fact that a prosecutor intentionally fails to perfom his duty may be regarded as an admission that performance would injure the government's case; an admission, so to speak, of prejudice which might, particularly in close cases, tip the scales. *See, e.g.,* Napue v. Illinois, *ante,* 360 U.S. at 270, 79 S.Ct. 1173. Alternatively, even though we

* Hon. Bailey Aldrich, United States Senior Circuit Judge, First Circuit, sitting by designation.

could not be persuaded that the defendant had been seriously prejudiced, if the prosecutorial conduct was censorable we might reverse a conviction in the interest of keeping the administration of justice beyond the "suspicion of reproach," or, perhaps, as a prophylactic against willful prosecutorial misconduct. Kyle v. United States, 297 F.2d 507, 514 (2d Cir. 1961); see Mooney v. Holohan, 294 U.S. 103, 112–113, 55 S.Ct. 340, 79 L.Ed. 791 (1935); cf. Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914).

The government's position (in a brief filed by other than trial counsel) was that the court permitted full cross-examination as to DeVito's understanding of his agreement with the government, including even DeVito's subjective conclusion as to what the government's sentencing recommendation would be.

"[DeVito] testified that the prosecutor, Mr. MacIntyre ' . . . says he would make a recommendation on the day of my sentence to the Judge and it was entirely up to the Judge—the Judge's own discretion whether he would accept it or not.' "

"[DeVito] testified that he 'expected the Government's recommendation would help him get the lightest possible sentence:' and that he had 'never been told by anyone that the recommendation would be for probation.' "

Thus the defendants, the government says, had ample opportunity to put before the jury the full relationship between DeVito and the government. Finally, the government pointed out that certain self-contradictory testimony by the prosecutor, Mr. MacIntyre, was not given in the presence of the jury and therefore was not prejudicial, and asserted that what took place during the summation, post, was not error.

We turn to the record facts referred to in defendants' briefs. Early during cross-examination De Vito said that the prosecutor had told him that in return for testifying he would make a "recommendation" as to his sentence, but that he did not state what it would be.[1] However, he did later say that he did expect probation.[2] After the jury was excused for the day, defense counsel put the prosecutor on the stand. His testimony was that although he told DeVito he would make a recommendation, he "believed" he did not tell anyone what the recommendation would be. The next day, in the continued absence of the jury, in response to further pressing by the defense, he admitted that he told DeVito's counsel that he was going to recommend probation. The reason for this reluctance is elusive. Unobserved by counsel and by the court, De Vito was in the courtroom at that time. When his presence was discovered, in response to a question by the court he said his attorney had not disclosed this recommendation to him. The court then prohibited any further inquiry or mention of this promise to the attorney in the presence of the jury.

A "recommendation" that a defendant hoped would be for probation, and a positive commitment to recommend probation are two very different matters. Whatever is the commitment must be kept. Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). The jury should have been permitted to find that DeVito in fact knew the full promise. His denial that his attorney had told him should not have ended the matter, for it was DeVito's very credibility that was at stake. The prosecutor admitted that he had not requested DeVito's counsel to keep the promise secret from his client, and a jury could reasonably infer that counsel would in fact communicate. Indeed, we

---

1. The testimony was accurately quoted in the government's brief, ante.

2. "I don't know whether I expect probation for testifying or whether I expect probation because I pleaded guilty and I want to plead my guilt and start a new life."

can scarcely doubt that he would. There is no reason for the prosecutor to make the promise, except for its intended effect upon the witness.

■ Defendants were not only deprived of all evidence of this promise, but the prosecutor failed to disclose at trial that DeVito was in separate and further difficulties, this time involving counterfeit government securities, giving him further reason for "cooperating" with the government. This matter came to the defense's attention only after, trial, when, at DeVito's sentencing, his "cooperation" was detailed and he received here, also, a suspended sentence and probation. In the light of our clearly announced rule it is difficult to think that the prosecutor's failure to disclose this further interest of DeVito's was inadvertent. Hibler v. United States, ante, 463 F.2d at 459; Rhinehart v. Rhay, 440 F.2d 718, 723 (9th Cir. 1971).

Instead of making disclosure, the prosecutor elevated and exacerbated the situation. When, during the summation, defense counsel argued that DeVito "is going to get sentenced after this case. He has a deal. Whatever that deal is, I don't know," the prosecutor objected. "That is an improper statement, your Honor. There is no evidence of that whatsoever." The court replied, "I think that is certainly an improper statement. Now, you can state what the testimony is, but that wasn't the testimony." Counsel dropped the matter by referring to the jury's memory.

It may be that this exchange was technically correct, depending on how one interprets the word "deal." We may observe, however, that for a prosecutor to fail to keep his promise as to a recommendation is enough to require the court to vacate a plea. Santobello v. New York, ante. It is with this background that we view the prosecutor's further remarks which the government says were not prejudicial.

"The fact that they state to you that there was a deal made, is ridiculous. Because I have nothing to do with sentencing whatsoever. . . ."

This, of course, was not true; otherwise there would be no point in even discussing recommendations.

"Mr. DeVito . . . has nothing to gain in this case, except here in court having the court hear him testify, that is it."

This, equally, was not true. With the court's exclusion of the specific promise of probation on the one hand, the downgrading of even the admitted evidence of the witness' hope for indulgence on the other, and the concealment of significant further evidence supportive of that hope, we cannot feel that defendants have had a full opportunity of attacking the credibility of a, and in the case of one defendant, the, main witness against them. There must be a new trial.

A separate point is raised by Gerard in connection with Count 4, against him alone, added by the second indictment. This charged him with carrying a firearm during the commission of the previously alleged felonies, in violation of 18 U.S.C. § 924(c). The matter is material because the court imposed a separate, and in this instance, a consecutive sentence. Gerard claims that under North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), this count, and this sentence, were impermissible infringements on his right to assert the invalidity of his plea.

*Pearce* held that, absent some proper reason affirmatively shown for imposing a longer sentence after the first had been vacated by reason of error committed at the trial, an increase of sentence was constitutionally impermissible as bearing the appearance of vindictiveness for taking the appeal; the Court pointing out that fear of vindictiveness might discourage meritorious appeals. Rejecting claims of double jeopardy and equal protection, the Court did not bar increased sentences for proper reasons, but held that such reasons must be restricted to demonstrated events occur-

ring subsequently to the first sentencing.[3] The basis of the *Pearce* opinion was recently re-emphasized when the Court held that it was not necessary that such reasons appear if the circumstances precluded the possibility of improper motivation. Chaffin v. Stynchcombe, 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973) (second jury set sentence, not knowing of first); *see also* Colten v. Kentucky, 407 U.S. 104, 92 S. Ct. 1953, 32 L.Ed.2d 530 (1972).

Sentencing after a retrial is not the sole area for the application of *Pearce*. In the course of that opinion the Court affirmed the decision in Rice v. Simpson, 274 F.Supp. 116 (M.D.Ala.1967). Rice had been convicted in the state court on guilty pleas, but, while serving his sentence, had persuaded the state court to set aside the conviction and pleas due to lack of representation by counsel. Upon conviction following a full trial Rice was given a greatly increased sentence. The district court, on a habeas petition, ruled the increase impermissible. In affirming, the Court quoted the district court's opinion to the effect that it was "shocking that the State of Alabama has not attempted to explain or justify the increase in Rice's punishment," and that "the conclusion is inescapable that the State of Alabama is punishing petitioner Rice for his having exercised his post-conviction right of review." 395 U.S. at 726, 89 S.Ct. at 2081.

Although we do not escape the basic lesson of *Pearce* by showing that we are in another situation, different circumstances may suggest another litmus test for the elimination of vindictiveness. In addition to the difference common to all plea cases, in the instant case the sentencing court was presented with a spe-

cial consideration in the new count to the indictment. This may call for an examination of the propriety not only of the resentencing itself but also of the prosecutor's action in adding the count, since, at least in some circumstances, a prosecutor, too, may be guilty of vindictiveness. *See* Chaffin v. Stynchcombe, ante, 412 U.S. at 27 n. 13, 93 S.Ct. 1977; Williams v. McMann, 436 F.2d 103, 105 (2d Cir. 1970), cert denied 402 U.S. 914, 91 S.Ct. 1396, 28 L.Ed.2d 656.

The Court in *Pearce (Rice)* entered into no discussion of how the possibility of vindictiveness could be excluded in the case of resentencing after a withdrawn plea, finding it unnecessary since no attempt of any kind was made in that case. We believe that there may be a broader range of possible answers here than in cases like *Pearce* itself, where the first sentence was imposed after a full trial. The very fact, for example, that there was a plea suggests the possibility of a plea bargain, or perhaps a consciously lower sentence in consideration of the defendant's not insisting upon trial. Without going into the thorny area of plea bargaining participated in by the court, United States v. Stockwell, 472 F.2d 1186 (9th Cir. 1973), cert. denied 411 U.S. 948, 93 S.Ct. 1924, 36 L.Ed.2d 409, *see, in general,* Note, The Unconstitutionality of Plea Bargaining, 83 Harv.L.Rev. 1387 (1970), plea bargaining by a prosecutor is a well accepted procedure. Chaffin v. Stynchcombe, ante; Cortez v. United States, 337 F.2d 699 (9th Cir. 1964), cert. denied 381 U. S. 953, 85 S.Ct. 1811, 14 L.Ed.2d 726. If, as part of that process, a prosecutor may properly indicate the risks in not pleading guilty, whether of a larger sentence or of a larger exposure, *see* Brady v. United States, 397 U.S. 742, 750, 90 S.

---

3. Thus the First Circuit in Marano v. United States, 374 F.2d 583 (1967), a pre-*Pearce* decision, held that the district court, after a second trial, could not be allowed to impose a longer sentence even though the government had succeeded in painting a blacker picture of the original crime. *Cf.* Walsh v. United States, 374 F.2d 421 (9th Cir. 1967). Cases such as United States v. Coke, 404 F.2d 836 (2d Cir. 1968) holding that it is enough if the court states it relied on the blacker picture are overruled by ·*Pearce.*

Ct. 1463, 25 L.Ed.2d 747 et seq. (1970),[4] we see no reason why the state should necessarily be precluded in all respects from actualizing these risks when the plea is withdrawn. We would be concerned if, through an indiscriminate application of the *Pearce* rule, the government should always be locked into its side of the bargain when the defendant succeeds in withdrawing from his. *Cf.* United States v. Resnick, 483 F.2d 354, 358 (5th Cir. 1973); United States ex rel. Williams v. McMann, 436 F.2d 103, 106–107 (2d Cir. 1970). If, for example, a defendant pleaded guilty to one count and the prosecutor dismissed the others, it should be reasonably apparent that the dismissal was in consideration of the plea; if the defendant succeeded in withdrawing the plea, he should not be able to object to the prosecutor's reviving the other counts. *Cf.* Santobello v. New York, ante, 404 U.S. at 263 n. 2, 92 S.Ct. 495. That, however, is not necessarily the same as adding a new count which had not entered into the proceedings before.

When the present defendants came on for sentencing as a result of their pleas, a discussion occurred from which the court concluded, correctly or not, that they believed they had a proper reason to expect a one-year sentence. Stating it was not responsible for that belief, and had no intention of meeting it, but, rather, had in mind "straight three year sentences," the court offered to permit the withdrawal of the pleas, an offer which defendants accepted. Under these circumstances *Pearce (Rice)* is obviously inapplicable to the three-year sentence the court ultimately imposed on counts 1–3; nor do defendants contend otherwise. We believe, however, that it is applicable, on the facts of this case, to the additional, consecutive sentence[5] on count 4 for at least one reason.

■ The record shows that at the time of the aborted sentence hearing the court was aware of the fact that Gerard had carried a gun. It did not learn of any new facts which could justify a further sentence; it merely announced at the sentencing that at the earlier hearing the facts which supported the later fourth count had been "treated lightly . . . . So I didn't take that factor into specific account." This change in the court's view of the overall facts is not even as favorable to the government as that in Marano v. United States, ante, n. 3, and defendant here is no more assured that vindictiveness did not enter into the resentencing than were defendants in *Pearce*. Where the rebuttal of the possibility of vindictiveness is by the presentation of additional information, "identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding," the *Pearce* requirement, 395 U.S. at 726, 89 S.Ct. at 2081, is scarcely met by transferring old facts from the presentence report to a separate count in the indictment. Nor are any other circumstances "affirmatively appearing," *Pearce*, ante, at 726, 89 S.Ct. 2072, that might be an adequate substitute. We must, therefore, hold the increase in sentence impermissible.

The situation as to the United States Attorney's filing the additional count would seem little different. He offers as the sole reason, "As long as the possibility of this agreed disposition existed it would have been pointless for the government to seek additional counts." Having in mind that he knew all the facts from the outset, the breakdown in the agreement seems scarcely a new reason for not including the count initially. In view of the difficulties we would face in distinguishing this case from *Pearce (Rice)*, we do not propose to try to do so

4. Always assuming the indication is factually "justified," (*Brady*, ante, at 751 n. 8, 90 S.Ct. 1463), a matter not to be doubted in the case at bar.

5. We note that although the language in 18 U.S.C. § 924(c) is ambiguous on the subject, for a first offense under this statute a consecutive sentence is not mandatory. United States v. Sudduth, 457 F.2d 1198 (10th Cir. 1972).

simply to permit the imposition of what can be no more than a concurrent sentence on a count the government did not think worth bringing in the first place.

The verdicts and judgments are vacated, and a new trial ordered on Counts 1, 2 and 3. Count 4 is to be dismissed.

SNEED, Circuit Judge (concurring in part and dissenting in part).

I am in full agreement with my brethren with respect to the necessity of a new trial because of the government's failure to disclose adequately its relations with the witness DeVito. I respectfully dissent, however, from that portion of their holding that dismisses Count 4 of the second indictment.

My brethren believe that the Due Process Clause, as interpreted by the Supreme Court in North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), requires that Count 4 be dismissed. I dissent because in my view the application of the reasoning and technique of *Pearce* to the facts of this case as they relate to Count 4 is neither required nor wise.

Judge Aldrich emphasizes that the trial court was aware, prior to its initially suggesting the imposition of a three-year sentence, that Gerard had carried a gun during the commission of the principal offense. It will contribute to the understanding of the issues that separate us to set forth the colloquy, as it relates to the court's prior knowledge, which occurred between the court and counsel for Gerard at the time sentencing was actually imposed.

Mr. Michaelson: . . . Your Honor's intention the last time was to give a three-year sentence, yet your Honor had before him the very same factual situation.

The Court: No, I didn't. I beg your pardon. I didn't mean to contradict you flatly. At that time I had in the probation report a note concerning this gun proposition. At that time it was not charged and I didn't think that it was appropriate for me to consider it except as it might have reflected upon the other counts. It was treated lightly, you might say, and I think your treatment was the same way. So I didn't take that factor into specific account.

Now that I have heard all the evidence and have come to my own conclusions about it, I think that I have to take it into account.

In *Pearce*, as well as in its companion case, Simpson, Warden v. Rice, the Supreme Court was concerned with eliminating vindictiveness in the imposition of sentence following a second trial, which the defendant had obtained as a result of a successful collateral attack on his first conviction. The heart of the Court's position was expressed in the following lines:

Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge.

In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully re-

viewed on appeal. (Footnotes omitted.) 395 U.S. 711 at 725, 726, 89 S. Ct. 2072, 2080, 23 L.Ed.2d 656.

It is obvious that the foregoing language cannot be applied literally to the facts of this case. Here there has been no prior conviction, no appeal from or collateral attack on a prior conviction, no second trial, and only one completed sentencing proceeding. Moreover, the record before us quite adequately precludes any inference of vindictiveness on the part of the trial court in imposing the consecutive one-year sentence with respect to Count 4. The trial court, at the time it rejected the initial plea bargain with respect to the three-count indictment, quite properly could consider Gerard's possession of a firearm only to the extent that such possession bore on the three counts then before it. It is consistent with the record to assume that this was the extent to which it was considered.

The situation was quite different at the time sentence was imposed following Gerard's conviction on the four counts. The trial court presumably was then under an obligation to impose a sentence with respect to each count. My brothers appear to believe that the accrual of this duty, made necessary by the superseding indictment and conviction thereon, does not represent "new facts" which, under *Pearce (Rice)*, will justify an aggregate sentence greater than that the trial court previously indicated it was prepared to accept. It is obvious, however, that in this case the superseding indictment, joined with the development of the facts at the trial concerning that count, Gerard's conviction thereon and the duty of the trial court to impose sentence pursuant to Rule 32, Federal Rules of Criminal Procedure, do constitute "new facts" within the ordinary meaning of those words. Moreover, these facts should be more than sufficient to justify the imposition of a consecutive one-year sentence based on the fourth count.

The purpose of the majority's proscription is apparently to discourage trial judges from punishing defendants who, when confronted by the terms of the plea bargain, choose instead to stand trial. While this objective has been expressly recognized by this Court in United States v. Stockwell, 472 F.2d 1186 (9th Cir. 1973), in that case the trial court had made plain to the defendant that the sentence it would impose following trial could be greater than would be imposed following a plea of guilty. Under such circumstances a requirement that there be an affirmative showing that a post-trial sentence was prompted neither by vindictiveness nor a desire to punish the defendant for rejecting the offered plea was entirely proper.

It is important to understand what the majority here condemns. It does not appear inconsistent with their approach for the trial court to have directed that the one-year sentence was to run concurrently; nor, apparently, would it have been improper for the trial court to have imposed two-year sentences with respect to the three counterfeiting counts and then imposed a one-year consecutive sentence on the fourth count. What appears to be forbidden is an aggregate sentence greater than that which the trial court indicated it was prepared to accept *prior* to the addition of the fourth count.

However, the majority's holding fails to take into account a crucial difference between the facts before us in *Stockwell* and those involved in the instant case. The distinction has as its source the superseding indictment, which added the fourth count and which originated with the prosecutor, not the trial judge. If it was a proper indictment, the defendant should not expect to receive, if convicted on all counts, a sentence no greater than that which the trial court had earlier suggested as being appropriate under the original three-count indictment. Because no meaningful sentence could be imposed under the reasoning of the majority, and because the prosecutor's position is said to be "little different" from that of the trial judge, it is arguable that the issue before us in this case is in fact the propriety of the new fourth

count being included in the superseding indictment rather than the appropriateness of the sentence imposed by the trial court with respect to that new count.

It is difficult to understand the purpose of a principle which requires that prosecutors include all possible counts in their initial indictment even in the absence of concealment of facts from the defense. The extent to which this principle creates mischief can be illustrated dramatically by comparing two situations that appear to be functionally equivalent, but which will be treated differently unless the view of my colleagues is narrowly restricted to the facts of this case. The first is where an indictment containing four counts, for example, is obtained prior to any plea bargaining. Following such bargaining, the prosecution offers to drop Count 4 in exchange for a guilty plea on the remaining three. The defendant agrees, but the trial judge upon hearing the prosecution's recommended sentence rejects the bargain and permits the defendant to withdraw his plea. The majority recognizes that prosecution thereafter on the four counts is proper. It is unclear, however, the extent to which the trial judge's discretion will be limited to the sentence he might have initially thought proper prior to the defendant's withdrawal of his plea. Perhaps the majority would limit the aggregate sentence to that which the trial judge indicated he would impose at the time the plea bargain was rejected, but that is by no means certain. In any event, in light of the opinion in this case a prudent trial judge cannot commit himself to a sentence with respect to the three counts when rejecting a plea if he wishes, without serious question, to retain full freedom of action.

The signals are much clearer when the plea bargain *precedes* indictment. Assuming that as a consequence of such bargain only a three-count indictment is obtained, and that the trial judge, aware of facts sufficient to support a fourth count, rejects the bargain. It is tolerably plain that my brethren would pro-hibit the prosecutor from obtaining a superseding indictment with four counts in the absence of "new facts" which were not known to him at the time he obtained the original indictment. It is painfully clear, however, that even were the prosecutor to obtain a new indictment with an added count, there could be no justification under the majority's approach for an aggregate sentence greater than that which the trial judge may have indicated was proper with respect to the initial three-count indictment. In such a case it is quite doubtful that the trial judge could retain any freedom of action by concealing his estimate of a proper sentence at the time of his rejection of the plea inasmuch as the majority appears to regard the addition of such a fourth count as *per se* improper.

There are additional difficulties with the approach taken in Judge Aldrich's opinion. Although I assume that its philosophy would require the invalidation of a count added by a vindictive prosecutor on the basis of facts known *only* to him, or on the basis of facts known to him and to the defendant and his counsel, this cannot be said with complete assurance. Too much weight appears to have been placed by the majority on knowledge by the trial judge of the facts upon which the additional count rests to permit such an easy conclusion.

There also exists uncertainty about the nature of the facts sufficient to make an "affirmative" rebuttal of the possibility of vindictiveness. Obviously an assertion by the trial judge that he did not directly consider the facts which support the new count in arriving at his initial sentence will not be sufficient. An almost identical assertion was made by the trial judge in this case. It is also unclear whether under the majority's view the "new facts" must consist of all the operative facts of the additional count or only a portion of such facts. It may be that mere contextual facts will be sufficient to rebut vindictiveness. Perhaps my brethren would require that

the "new facts" be unknown at the time of the collapse of the plea bargain to everyone, other than perhaps the defendant and his counsel, and that they consist of all the operative facts of the added count. In sum, the majority, in requiring an affirmative refutation of the mere possibility of vindictiveness, has left us in the dark concerning both the character of the "new facts" that are necessary and the identity of the persons to whom they must be "new".

It may be that to some my concern with the majority opinion will appear exaggerated. To them, all that the majority requires is that all possible counts be included in an initial indictment. Enough has been said to indicate that the requirements imposed by the majority might not be met so easily. However, even if they can be so satisfied, the consequence is a mischievous distinction between pre-indictment and post-indictment plea bargaining.

Any such distinction moves this Court toward greater supervision of the plea bargaining process than I believe appropriate. The legitimacy of plea bargaining has been recognized by the Supreme Court. Brady v. United States, 397 U.S. 742, 749–755, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1969). The prosecutor, a leading actor in this process, is a creature of the executive branch of government; and it is to the executive branch that the people in the long run must look for control of the discretion our system of criminal justice vests in its prosecutors. *See* Pugach v. Klein, 193 F.Supp. 630 (S.D.N.Y.1961); Note, Prosecutor's Discretion, 103 U.Pa.L.Rev. 1057 (1955). In the short run, the safeguards of a trial should limit the harm of vindictively imposed additional counts. Insofar as the trial judge is concerned, I would impose the restraints of *Pearce* (*Rice*) in the pre-conviction plea bargaining setting only when the trial judge has indicated to the defendant that, unless he accepts the terms deemed proper by the judge with respect to the counts which have been, or would be, charged under the bargained plea, a greater sentence will be imposed following trial and conviction. No such greater sentence should be permissible. However, these are not the facts of the case before us.

The fourth count should not be dismissed.