UNITED STATES of America,
Plaintiff-Appellee,

v.

Herbert David SCHIFFMAN,
Defendant-Appellant.

No. 76–3742
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

May 26, 1977.

Rehearing Denied June 29, 1977.

John J. Reynolds, Chicago, Ill., for defendant-appellant.

John W. Stokes, U. S. Atty., William L. McCulley, Atty., Dept. of Justice, Atlanta, Ga., for plaintiff-appellee.

Before BROWN, Chief Judge, and RONEY and HILL, Circuit Judges.

JOHN R. BROWN, Chief Judge:

Appellant was convicted upon trial by jury of one count of violating 29 U.S.C.A. § 186(b), which makes it unlawful for a labor union official to unlawfully, willfully, and knowingly request, demand, receive or accept a "thing of value" from an employer of the employees whom the union official represents. Appellant argues that (i) the trial court committed plain error by not declaring a mistrial following the admission of a hearsay statement by a government witness, (ii) the trial court committed error in failing immediately to answer an inquiry from the jury, and (iii) there was not sufficient evidence to support the verdict. We disagree and affirm.

Appellant was president and administrative agent of the Miami Local Hotel and Restaurant Employees and Bartenders Union, and was vice-president of the same International Union. In June 1973, in connection with the campaign to organize certain "non-union" hotels, appellant made a trip to Atlanta, Georgia. While in Atlanta, appellant made arrangements to stay at the only major "union" hotel in the city, the Hyatt Regency Hotel.

---

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Company of New York, et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

In arranging for his stay at the hotel, appellant spoke to the general manager of the hotel and informed him that several Union executives would be staying at the Hyatt at various times during the year and that they would like a special rate. The general manager testified that he offered the corporate rate, but that the appellant asked for a better rate of $16.00 a night. The general manager testified that the hotel normally gives the same corporate rate to all corporations which meet certain standards. Once the rate is set, there is normally no further negotiating with individual corporations despite the enormous volume of business which a few of the corporations give to the Hyatt Hotel chain. On November 7, 1973 the corporate rate for the Hyatt Regency in Atlanta was $31.00 for a single room and $38.00 for a double room.

Nevertheless, the general manager testified that he agreed to give appellant and other Union members in his party a rate of $16.00 a night, despite the fact that appellant probably would not even qualify for the corporate rate. Furthermore, this low rate was well below the "break-even" point of the hotel, since, if the hotel had operated on a 100% occupancy rate of $16.00 a room, the hotel would not have even been able to pay off its lease payments on the building.

Appellant stayed in the hotel for 80 nights during the period between June 21, 1973 and April 13, 1974. The difference between the amount which he did pay ($1,419) and what he should have paid ($2,697) was $1,278. The government instituted this charge against appellant, claiming that appellant's demand for this "special rate" (and the subsequent savings which it generated) was in violation of 29 U.S.C.A. § 186(b).

■ Appellant initially contends that the trial court committed plain error by failing to declare a mistrial on its own motion following a hearsay statement made by the general manager of the Hyatt Hotel in Atlanta. The general manager testified that during January 1974, two men from the Justice Department requested permission from him to inspect the records on all

the Union representatives that it had staying at the hotel. The general manager notified appellant of the actions of the Justice Department and informed him that the officials were particularly interested in knowing about the Hyatt's room rates and those being offered to the Union representatives. When he sensed that the Justice Department might have been interested in more than the travel records of Union representatives, he asked the official if it were possible that the Hyatt might be in trouble. Before testifying further, the prosecutor interrupted the witness, but before asking another question, the defense attorney interjected: "Excuse me, I suggest that the witness be allowed to answer, continue with his answer." Thereupon, the witness continued, saying

"I asked, 'is there any possibility that we could be in trouble?' His answer to me was: 'It's not my position to advise you on legal matters,' and that seemed to me a little evasive answer as opposed to just turning around and saying 'yes' or 'no'. So I called Art Stokes, who is our attorney from Branch and Swan, who have been our attorneys ever since we've been in town. Art Stokes said something to the effect of '. . ., yes. It's illegal. It's against a thing called the Taft-Hartley Act, and find out where it came from.'"

Appellant contends that allowing the jury to hear a hearsay legal opinion of a lawyer who was not present and could not be examined that a crime had been committed clearly invaded the jury's province and deprived him of a fair trial. He admits that no objection was made to this testimony but asserts that there was no cure for the admission of this testimony other than to declare a mistrial. We disagree. Viewing the evidence under a plain error standard, the error appears harmless beyond a reasonable doubt. *See, e. g., United States v. Resnick*, 5 Cir., 1973, 483 F.2d 354.

■ Appellant also argues that the trial court erred in failing to answer a juror's request that the Court reinstruct the jury as to the wording of the statute involved

which had been read to them in the original instructions. No objection was made at the time by counsel for defendant. The contention was first raised in appellant's post-trial motion for the Court to reconsider its denial of its motion for judgment of acquittal or in the alternative for a new trial. The jury was sequestered at 11:30 a. m. At 11:50 a. m., the jury requested that the statute be reread to them. The Marshal informed the trial judge of the jury's request. However, the trial judge was then in the process of selecting a jury for another trial. Accordingly, the Judge advised the Marshal to return to the jury room after speaking with the respective attorneys and advised the jury that he would read the statute to them at 12:30 p. m. that day. Five minutes after being informed of this by the Marshal, the jury returned a guilty verdict.

In light of the failure of the defendant's counsel to object or even to request the Court to reinstruct the jury before a verdict was accepted, we must review this claim under a plain error standard. Under that standard, we find no plain error.

Finally, defendant argues that there was not sufficient evidence to sustain his conviction. We disagree. The fact that appellant received the $16.00 rate through negotiation with the general manager is undisputed. Also undisputed is the fact that appellant requested a special rate below the corporate rate, though he probably did not qualify even for the lower corporate rate. The jury could properly have reached the conclusion that the savings resulting to appellant from the special rate was a thing of value demanded by appellant from the hotel, in violation of the statute. Under these circumstances, we conclude that the evidence was sufficient to support the jury's verdict.

AFFIRMED.