**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Robert E. GOODING, Defendant-**
**Appellant.**

**No. 72–2104.**

**Summary Calendar.**[*]

United States Court of Appeals,
Fifth Circuit.

Feb. 2, 1973.

Rehearing Denied Feb. 28, 1973.

---

[*] Rule 18, 5th Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5th Cir. 1970, 431 F.2d 409, Part I.

Milton E. Grusmark, Miami Beach, Fla., for defendant-appellant.

Robert W. Rust, U. S. Atty., Kenneth G. Oertel, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before THORNBERRY, COLEMAN and INGRAHAM, Circuit Judges.

THORNBERRY, Circuit Judge:

Appellant Robert Gooding was convicted after a jury trial of conspiracy[1] to violate the Travel Act[2] and of committing a substantive Travel Act offense by travelling between states with intent to commit extortion.[3] On this appeal he argues, first, that the evidence was insufficient to support the convictions because no connection between the extortion and a "business enterprise" was proved and because no substantial relation was shown between his interstate travel and the extortion offense. Secondly, he argues that the trial court erred in denying his challenge to the array without allowing him to show that the method of selecting grand and petit jurors in the district where he was indicted and tried systematically excluded young voters and Cuban Americans. We reject both arguments and affirm the convictions.

### Sufficiency of the Evidence

■ The Travel Act, 18 U.S.C.A. § 1952, prohibits travel in interstate commerce or use of interstate facilities to promote or carry on certain unlawful activities. It is aimed principally at organized criminal enterprises, whose operations extend across state lines. Rewis v. United States, 1971, 401 U.S. 808, 91 S.Ct. 1056, 28 L.Ed.2d 493; United States v. Nardello, 1969, 393 U.S. 286, 89 S.Ct. 534, 21 L.Ed.2d 487. When, however, the unlawful activity furthered by interstate travel is one enumerated in § 1952(b)(2), i. e. extortion, bribery, or arson, the government need not prove any connection between the local offense and an ongoing "business enterprise" to make out a Travel Act offense, and may rely on a single act of extortion. United States v. Mahler, 9th Cir. 1971, 442 F.2d 1172, cert. denied 404 U.S. 993, 92 S.Ct. 541, 30 L.Ed.2d 545; Marshall v. United States, 9th Cir. 1966, 355 F.2d 999, cert. denied 385 U.S. 815, 87 S.Ct. 34, 17 L.Ed.2d 54, reh. denied 385 U.S. 964, 87 S.Ct. 388, 17 L.Ed.2d 309. Thus, that part of appellant's challenge to the sufficiency of the evidence based on failure to prove a connection between the extortion and a "business enterprise" must fail. No such proof was required.

■ In the second part of his challenge to the sufficiency of the evidence appellant charges that no connection was proved between the interstate travel and the unlawful activity of extortion. Appellant is correct in asserting that such connection must be shown, but we believe the evidence, when viewed in the light most favorable to the government, was more than sufficient in this respect.

■ The Travel Act does not proscribe all interstate travel which may in-

---

1. 18 U.S.C.A. § 371.

2. The Travel Act, 18 U.S.C.A. § 1952, reads:
   § 1952. Interstate and foreign travel or transportation in aid of racketeering enterprises
   (a) Whoever travels in interstate or foreign commerce or uses any facility in interstate or foreign commerce, including the mail, with intent to—
   (1) distribute the proceeds of any unlawful activity; or
   (2) commit any crime of violence to further any unlawful activity; or
   (3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity, and thereafter performs or attempts to perform any of the acts specified in subparagraphs (1), (2), and (3), shall be fined not more than $10,000 or imprisoned for not more than five years, or both.
   (b) As used in this section "unlawful activity" means (1) any business enterprise involving gambling, liquor on which the Federal excise tax has not been paid, narcotics or controlled substances (as defined in section 102(6) of the Controlled Substances Act), or prostitution offenses in violation of the laws of the State in which they are committed or of the United States, or (2) extortion, bribery, or arson in violation of the laws of the State in which committed or of the United States.
   (c) Investigations of violations under this section involving liquor shall be conducted under the supervision of the Secretary of the Treasury.

3. Fla.Stat.Ann. § 836.05 (1965).

cidentally lead to a furthering of unlawful activity, United States v. Hawthorne, 4th Cir. 1966, 356 F.2d 740, cert. denied 384 U.S. 908, 86 S.Ct. 1344, 16 L.Ed.2d 360; it prohibits only interstate travel "with intent" or purpose to carry on a listed unlawful activity. The fact that travel is motivated by two or more purposes, some of which lie outside the ambit of the Travel Act, will not preclude conviction under the Act if the requisite § 1952(a) intent is also present. Compare United States v. Hawthorne, *supra*, with United States v. Compton, 6th Cir. 1966, 355 F.2d 872, cert. denied 384 U.S. 951, 86 S.Ct. 1571, 16 L.Ed.2d 548. It is well established that intent, an element of the offense, may be inferred from objective facts, such as defendant's conduct immediately before and after travel. United States v. Salsbury, 4th Cir. 1970, 430 F.2d 1045, 1051; Hanley v. United States, 5th Cir. 1969, 416 F.2d 1160, cert. denied 397 U.S. 910, 90 S.Ct. 908, 25 L.Ed.2d 91; United States v. Compton, *supra*. Likewise, a conspiracy may be inferred from such conduct. United States v. Barrow, 3d Cir. 1966, 363 F.2d 62, 64, cert. denied 385 U.S. 1001, 87 S.Ct. 703, 17 L.Ed.2d 541.

The government's evidence tended to prove the following events: On Thursday, September 23, 1971, Gooding's co-defendant and co-conspirator Accetturo contacted the extortion victim Hollister in Miami, Florida and demanded $280,-000. In the evening of the same day Accetturo met with Hollister in a Miami restaurant and, claiming to act on behalf of Gooding, repeated his demand in a threatening manner. Gooding flew from New York to Miami at about 9:00 p. m. on Friday, September 24, 1971. On the following day, Saturday, September 25, he contacted Hollister by telephone at about 10:00 a. m. in regard to the money Hollister was to pay and demanded a meeting with Hollister at noon. When Hollister failed to appear at noon, Gooding and Accetturo telephoned him again and insisted on a meeting and on payment of the money. At one point in this telephone conversation—a tape recording of which was introduced into evidence at trial—Gooding made a statement which reflected on his purpose in traveling to Miami:

> I ain't here for my glory, man. I got a million things to do in New York. I have got a million . . . things to do and the man sends for me, I come, okay. Period, that is it. I don't want to know nothing. Look, if you don't show up, you know what is going to end up happening.

In the afternoon of the same day, Gooding, Accetturo, Hollister, and Mr. O'Cleary, Hollister's attorney, met at the restaurant of the Playboy Plaza Hotel. Accetturo took Hollister aside and attempted to arrange an early payment of the money, while Gooding occupied O'Cleary at a table some distance away. On September 28, 1971, Accetturo finally did obtain $15,000 in cash from Hollister.

■ We think these facts provide a basis upon which a jury could rationally infer the requisite Travel Act intent. The quoted portion of appellant Gooding's conversation and the timing of his trip to Miami and his contact with Accetturo and Hollister strongly indicate travel with intent to carry out extortion. Appellant contends that his only purpose in travelling to Miami was to visit his girl friend, and we agree that his evidence did tend to show such a purpose. The jury, however, was not required to believe this evidence, and if it did believe the visit was one of Gooding's purposes in coming to Miami on the weekend in question, it was not required to find that the visit was his only purpose in making the trip. In reviewing the sufficiency of the evidence, our function is limited to determining whether sufficient creditable evidence was presented to support the jury's verdict. Glasser v. United States, 1942, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680. Regardless of what additional purpose was shown, we hold that the government presented sufficient evidence in this case to support a jury inference that appellant trav-

elled between states with the requisite § 1952 intent.

### Jury Selection Plan

Appellant based his challenges to the array below on the contention that the jury selection method in use at the time and place of his indictment and trial excluded two groups of potential jurors: young voters and Cuban Americans. He did not charge purposeful discrimination against these groups, but rather a failure to update the master jury wheel at sufficiently frequent intervals to assure that jurors were drawn from a current cross section of the community in accordance with statutory [4] and constitutional [5] requirements. The last update before appellant's February 1972 trial occurred in October of 1968, so that the length of the interval complained of is about three years and four months. Young voters who became eligible just after the filling of the master jury wheel were automatically excluded from jury service at the time of appellant's trial in 1972 because the master wheel was not refilled in the interim. Further, appellant asserts, a large number of post-Castro Cuban immigrants became United States citizens shortly after 1968, and these Cuban-Americans were similarly automatically excluded from jury service in early 1972. Appellant contends that these exclusions defeat "a fair possibility for obtaining a representative cross-section of the community." Williams v. Florida, 1970, 399 U.S. 78, 100, 90 S.Ct. 1893, 1906, 26 L.Ed.2d 446.

The jury selection system under attack is that detailed in The Plan of the United States District Court for the Southern District of Florida for the Random Selection of Grand and Petit Jurors,[6] which has withstood two recent attacks before this court in United States v. Blair, 5th Cir. 1972, 470 F.2d 331 and United States v. Pentado, 5th Cir. 1972, 463 F.2d 355. A similar plan for the Northern District of Florida was upheld in United States v. Kuhn, 5th Cir. 1971, 441 F.2d 179. In *Kuhn* we approved as valid under the Jury Selection and Service Act of 1968, 28 U.S.C.A. § 1861 et seq., a five year interval for emptying and refilling the jury master wheel, the master list from which grand and petit jurors are drawn, and held a lag of one year and five months between the filling of the master wheel and the time of trial to be impervious to constitutional attack. In *Pentado* we held a three year lag between the filling of the master wheel and trial to be constitutionally acceptable. In *Blair* we held the District Clerk did not fail to comply with the Plan by not adding names to the master wheel on a continuing basis between the quadrennial emptying and refilling.

In part, appellant appears to make the same argument made in *Blair* —that the Plan required the Clerk to add names to the master wheel continuously, not only at quadrennial intervals, to maintain a current cross-section. *Blair* makes clear that the Plan contains no such requirement and disposes of this argument entirely. To the extent appellant bases his argument on statutory grounds *Kuhn* is dispositive. If the five year interval is valid under the Act, the three-and-one-third year time lag com-

---

4. 28 U.S.C.A. § 1861 (1972 Supp.):
   "It is the policy of the United States that all litigants in Federal courts entitled to a trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes. . . ."

5. *E. g.*, Peters v. Kiff, 1972, 407 U.S. 493, 92 S.Ct. 2163, 33 L.Ed.2d 83; Williams v. Florida, 1970, 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446.

6. The Judges of the Southern District of Florida devised the Plan to implement the Jury Selection and Service Act of 1968, 28 U.S.C.A. § 1861 et seq., and the guidelines promulgated under it by the Judicial Conference of the United States. The development of the Plan is described in Gewin, The Jury Selection and Service Act of 1968, 20 Mercer L.Rev. 349 (1969). *See also* United States v. Blair, 5th Cir. 1972, 470 F.2d 331.

plained of here is necessarily also valid under the Act.[7]

 Nor do we believe appellant may rely on constitutional grounds. In *Kuhn* we held young voters aged twenty-one to twenty-three were not a cognizable group whose exclusion from jury service contravened the cross-section standard—that a time lag of one year and five months is constitutionally acceptable.[8] In *Pentado* we approved a three-year lag. We do not hesitate to hold that the lag of three years and four months in this case is also acceptable.[9] The court below was not obliged to hear evidence on this question for it could take judicial notice of the passage of time and the mathematically calculable effect of a given time lag in temporarily excluding certain qualified jurors from the opportunity for jury service. As noted above, the exclusions complained of on this appeal result not from purposeful discrimination, but from the orderly administration of the Plan. The Plan does temporarily bar certain new voters from jury service, whether or not they are young and whether or not they are Cuban-Americans. We do not believe the classes composed of (1) all those who have become eligible for jury service by attaining voting age within the last three years and four months and of (2) those Cuban immigrants who have become eligible for jury service by becoming citizens within the last three years and four months are such distinct groups that their temporary exclusion from jury service violates their statutory right to serve on juries or defendant's right to a fair trial.

Finding the evidence sufficient to support the jury's verdict, and finding no merit in appellant's challenge to the jury selection system, we affirm the judgment of the district court.

Affirmed.

---

7. Appellant's statutory argument must be evaluated under the Act as it stood at the time of appellant's trial, not as subsequently amended. *See* note 8, *infra.* We note that the amendment bearing on the period between refillings of the master wheel would lend no substance to appellant's statutory argument, even if the amendment had been law at the time of appellant's trial, since it provides for a four-year interval.

8. Chief Judge Brown noted in *United States v. Blair,* 5th Cir. 1972, 470 F.2d 331 n. 3, that "the alleged inherent defect involved in *Kuhn* has been cured, in large part, by Pub.L. 92-269 (April 6, 1972) which lowered the minimum age for qualification for Federal jury service to eighteen years and mandates that each master wheel be emptied and refilled by September 1, 1973, and no less often than each four years thereafter."

9. We note that Congress has set four years as the maximum interval for emptying and refilling the master wheel, Pub.L. 92-269 (April 6, 1972), and that the guidelines of the Judicial Conference of the United States contemplated two or four years intervals. Thus, both the statute and the guidelines contemplate that immediately before the emptying and refilling of the master wheel judges might be drawn from a wheel which has not been updated for four years. *Cf.* King v. United States, 1st Cir. 1965, 346 F.2d 123.