925 F.2d 1458
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Herman WOODEN, Defendant-Appellant.
 No. 90-5186.
 United States Court of Appeals, Fourth Circuit.
 Argued Dec. 6, 1990.
Decided Feb. 20, 1991.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Claude M. Hilton, District Judge. (CR-90-18-A)
 Charles Norman Shaffer, Shaffer & Davis, Chartered, Rockville, Md. (Argued), for appellant; Peter I.J. Davis, Shaffer & Davis, Chartered, Rockville, Md. on brief.
 Bernard James Apperson, III, Assistant United States Attorney, Alexandria, Va. (Argued), for appellee; Henry E. Hudson, United States Attorney, Elena M. Colianni, Third-Year Law Student, Alexandria, Va., on brief.
 E.D.Va.
 AFFIRMED.
 Before K.K. HALL and WILKINS, Circuit Judges, and N. CARLTON TILLEY, Jr., United States District Judge for the Middle District of North Carolina, sitting by designation.
 PER CURIAM:
 
 
 1
 Herman Wooden appeals his convictions for conspiracy to possess with intent to distribute and distribution of more than five kilograms of cocaine, possession with intent to distribute more than five kilograms of cocaine, and interstate travel in aid of racketeering. Finding no error, we affirm.
 
 I.
 
 2
 Undercover DEA Agent Alvarez, posing as a drug trafficker from New York named Carlos, met with Wooden on October 23, 1989, at a meeting arranged by Needham, a mid-level dealer. Arriving late, Wooden explained that he had been out collecting cash. He explained further that he had $150,000 in cash, but that some $70,000 had been seized from one of his workers in California. Wooden and Alvarez proceeded to negotiate for a sale of twenty kilograms of cocaine to Wooden. After Alvarez quoted a price of $276,000, Wooden said that he would need some additional time to raise that much money. The following day the two spoke by telephone four times, and Alvarez asked for $2,000 in expense money. Arrangements were made for Alvarez to pick up the money at a predetermined location from a courier to be sent by Wooden, and Alvarez did in fact receive the cash as arranged. The deal discussed on October 23 was never consummated, however, because of Wooden's inability to raise the necessary money.
 
 
 3
 On December 12, 1989, Needham was arrested after buying two kilograms of cocaine for $16,900 from an undercover agent. Needham and the agent had previously agreed that one of the kilograms was to be given on consignment. Agreeing to cooperate with the authorities, Needham admitted that Wooden was the source of the cash. While Needham was in custody, his beeper recorded an incoming call. Needham returned the call and was given another number. He eventually contacted Wooden at a District of Columbia number. Although the conversation was monitored by the police, the testimony concerning the call was somewhat in dispute. In any event, Needham, at the direction of the DEA agents, asked Wooden to meet him at a Fairfax, Virginia, restaurant.[1]
 
 
 4
 When the two met at the designated location, Needham told Wooden that "Carlos" was the source of the two kilograms and that he was waiting nearby to speak with Wooden. Meeting in the restaurant, Wooden and Alvarez discussed both the pending transaction as well as the previously discussed twenty kilogram deal. Alvarez agreed to front the second kilogram until Wooden was able to resell the drugs and obtain the remaining $18,000 later that evening. Alvarez also agreed to front two additional kilograms upon payment of the $18,000. They both then walked to a waiting automobile where Wooden paid $17,000, received the two kilograms, and was arrested.
 
 
 5
 Wooden was convicted of a single conspiracy count (21 U.S.C. Sec. 846), a substantive drug count (21 U.S.C. Sec. 841(a)(1)), and one Travel Act count (18 U.S.C. Sec. 1952). He was sentenced under the Sentencing Guidelines to concurrent terms of, respectively, 292, 120, and 60 months. He appeals the judgment of conviction.
 
 II.
 
 6
 On appeal, Wooden contends that the evidence at trial demonstrated two separate conspiracies rather than the single conspiracy for which he was indicted and, therefore, his conviction should be reversed because the proof did not conform to the indictment. Second, he argues that the evidence failed to show "a continuous course of conduct" necessary to support the Travel Act conviction.[2] We discuss each of these contentions in turn.
 
 
 7
 Wooden's conspiracy argument is that the October 23 and December 12 transactions were independent incidents that were insufficiently connected to constitute parts of a single conspiracy. Because the indictment alleges a single conspiracy beginning with the October 23 conversation and extending through the December 12 sale, Wooden argues that the government failed to prove the single conspiracy for which he was indicted. However, Wooden failed to raise this issue of variance before the trial court in any manner, and the jury was not instructed that they could find separate conspiracies. See Fed.R.Crim.P. 30. Our review, therefore, is limited to determining whether the trial court committed plain error in failing to sua sponte instruct the jury that they could find multiple conspiracies rather than the single conspiracy charged in the indictment. United States v. Richerson, 833 F.2d 1147, 1155-56 (4th Cir.1987).
 
 
 8
 A conspiracy encompasses a single agreement or "one general business venture." United States v. Leavis, 853 F.2d 215, 218 (4th Cir.1988). Whether there is a single or a multiple conspiracy depends on the overlap of actors, goals, and methods. Id. A seven-week passage of time by itself is an insufficient basis upon which to find multiple conspiracies. See id. (eight month gap between incidents not, by itself, sufficient to negate presumption that conspiracy continued). On both October 23 and December 12, Wooden bought or arranged to buy multi-kilogram amounts of cocaine from Alvarez and Needham acted as middleman. The "core members" and "basic operation" remained constant. See United States v. Dorta, 783 F.2d 1179, 1183 (4th Cir.), cert. denied sub nom. Drum v. United States, 477 U.S. 905 (1986). Moreover, during the last meeting, Wooden continued to discuss the unconsummated 20-kilogram transaction, a topic first broached on October 23. The government's proof amply supports a finding of a single conspiracy, and we are unable to say that the trial court's failure to sua sponte give an instruction on multiple conspiracies is "error 'so obvious that our failure to notice it would seriously affect the fairness, integrity, or public reputation of [the] judicial proceedings and result in a miscarriage of justice.' " Richerson, 833 F.2d at 1155 (quoting United States v. Bi-Co Pavers, Inc., 741 F.2d 730, 735 (5th Cir.1984) (quoting United States v. Howton, 688 F.2d 272, 278 (5th Cir.1982))).
 
 III.
 
 9
 Wooden next argues that his involvement in the "unlawful activity" of drug dealing was too sporadic to support the Travel Act conviction. He points to this court's requirement that the "business enterprise" of drug dealing, the "unlawful activity" for which Wooden was convicted, must be shown to have involved a "continuous course of conduct." United States v. Gallo, 782 F.2d 1191, 1194-95 (4th Cir.1986). There is no contention that the instruction to the jury on this charge was flawed in any respect. Our review is limited to deciding whether, after viewing the evidence in the light most favorable to the government, there is sufficient evidence such that any rational trier of fact could have reached the same result. Jackson v. Virginia, 443 U.S. 307, 319 (1979).
 
 
 10
 As we noted in Part II, Wooden continued to discuss the twenty kilogram deal on December 12. Alvarez testified that Wooden was late for the initial meeting because he said he was out "collecting money" and that he had some $150,000 on hand when he arrived. Alvarez testified further that Wooden blamed his cash shortage on the seizure by police of $70,000 from "one of his workers" sent to California. Other evidence, such as Wooden's agreement to take a kilogram of cocaine on consignment and his transfer of expense money to Alvarez, adequately supports a finding of a "continuous course of conduct."
 
 
 11
 Wooden raises an issue regarding the interstate travel element of the Travel Act conviction. He argues that his crossing the state line into Virginia was not done with the intent to further his drug business but, rather, was merely incidental to such business. This rather fine distinction is mentioned in a few reported cases, and may indeed be a valid one. See, e.g., United States v. Gooding, 473 F.2d 425 (5th Cir.), cert. denied, 412 U.S. 928 (1973). However, inasmuch as it is clear that Wooden came into Virginia on December 12 in response to Needham's request to "watch his back" or to "meet ... the party with the drugs,"[3] and then proceeded to buy two kilograms of cocaine, we need not linger on the issue. In the context of this case, it is difficult to characterize Wooden's interstate travel as being anything other than in direct furtherance of his illegal drug business.
 
 
 12
 The convictions are affirmed.
 
 
 13
 AFFIRMED.
 
 
 
 [1]
 Needham testified that he told Wooden that the reason for Wooden to come to Fairfax was "to meet with the party that has the drugs." A DEA agent, however, testified that Needham asked Wooden to come in order to "watch my back."
 
 
 [2]
 Wooden also raises three evidentiary issues on appeal. In light of the overwhelming evidence against him, we are unable to say that any errors by the trial court in the evidentiary rulings at issue were anything more than harmless. See United States v. Hasting, 461 U.S. 499, 509 (1983)
 
 
 [3]
 See supra note 1