RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0367P (6th Cir.)
File Name: 00a0367p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,
       *Plaintiff-Appellee,*

    *v.*

No. 99-6150

CHARLES ROY DEGAN,
       *Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 97-20140—Bernice B. Donald, District Judge.

Argued: September 22, 2000

Decided and Filed: October 12, 2000

Before: MERRITT, KENNEDY, and GILMAN, Circuit
Judges.

_____

**COUNSEL**

**ARGUED:** Robert M. Friedman, FRIEDMAN, SISSMAN
& HEATON, Memphis, Tennessee, for Appellant. Timothy
R. DiScenza, ASSISTANT UNITED STATES ATTORNEY,
Memphis, Tennessee, for Appellee. **ON BRIEF:** Robert M.
Friedman, William C. Harrison, FRIEDMAN, SISSMAN &
HEATON, Memphis, Tennessee, for Appellant. Timothy R.

1

DiScenza, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee.

―――――――――

**OPINION**

―――――――――

RONALD LEE GILMAN, Circuit Judge.   Charles Roy Degan was convicted under the federal murder-for-hire statute, 18 U.S.C. § 1958(a), for causing another individual to travel in interstate commerce with the intent to murder Degan's ex-wife in exchange for money.   He was sentenced to seventy months of imprisonment.   Degan appeals, claiming that (1) the government failed to establish the "jurisdictional" prong of the charge, (2) the district court improperly instructed the jury, and (3) the government failed to prove that Degan promised to pay anything to have the murder committed.   For the reasons set forth below, we **AFFIRM** Degan's conviction.

**I. BACKGROUND**

At the end of 1995, Degan, a resident of Memphis, Tennessee, met an individual named James Lee Noel, also a resident of Memphis, through a mutual friend.   After knowing Noel for only three weeks, Degan asked Noel to consider killing Degan's ex-wife in exchange for $5,000.   In response to Degan's request, Noel testified that he laughed and did not pay any attention to the proposal.

Thereafter, Noel encountered financial problems with the business he was running in Memphis and eventually moved to Picayune, Mississippi.   On June 4, 1997, Noel telephoned Degan in an attempt to locate the mutual friend who had introduced them.   During the conversation, Degan asked Noel whether he would come to Memphis to discuss the possibility of killing Degan's ex-wife in exchange for $5,000.   Degan also offered to send Noel $100 to assist him with his travel expenses.   After receiving the $100, Noel testified that he came to Memphis on June 9, 1997, both because of Degan's

request and because Noel had a scheduled court proceeding relating to his own divorce.

After arriving in Memphis, Noel contacted the Federal Bureau of Investigation because of his belief that Degan was serious about having him commit a murder. The FBI fitted Noel with a recording device. While wearing the device, Noel met with Degan. In discussing the proposed murder, Degan confirmed that he intended to pay Noel $5,000 for his services. Degan gave Noel directions to his ex-wife's house in Florida and described the residence and car to him. In addition, Degan instructed Noel how to use a shotgun in such a way that the ballistics and powder burns would be untraceable and directed Noel to take a spare license plate for concealment purposes. They agreed to meet again on June 14, 1997, the date Noel had preselected for his purported trip to the house of Degan's ex-wife to accomplish the murder.

On June 14, in conformity with their agreement, Noel arrived in Memphis to meet with Degan. At this time, Noel told Degan that he had purchased a gun. Degan again described to Noel the route to the house of Degan's ex-wife in Florida, directed Noel not to speed, gave him $50 to further assist with his travel expenses, and told Noel to make sure that the killing did not occur around the children. Shortly after this second meeting, Degan was arrested by the FBI. He was subsequently indicted and convicted of violating 18 U.S.C. § 1958(a).

## II. ANALYSIS

**A. The evidence was sufficient to establish that Degan caused Noel to travel in interstate commerce for the purpose of killing Degan's ex-wife**

Degan first argues that the district court lacked subject matter jurisdiction over the case because the government failed to show a nexus between interstate commerce and the crime charged. This argument lacks merit. Whether or not the government makes out the interstate commerce element of

an offense has no effect on the district court's subject matter jurisdiction. *See Williamson v. United States*, No. 96-2248, 2000 WL 222593, at *2 (6th Cir. Feb. 15, 2000) (unpublished table decision) ("[T]he defendant is not really challenging the court's subject matter jurisdiction. Instead, he is challenging the sufficiency of the evidence as to the 'jurisdictional' prong of the carjacking statute."). Consequently, Degan's real argument is that the evidence presented at trial was insufficient for a rational trier of fact to conclude beyond a reasonable doubt that Degan caused Noel to travel in interstate commerce for the purpose of killing Degan's ex-wife.

The standard of review for a claim based on the insufficiency of the evidence is whether, after reviewing the evidence in the light most favorable to the government, any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). In considering the inferences that a jury may draw from the evidence, we need not exclude every logical hypothesis other than guilt. *See United States v. Johnson*, 741 F.2d 854, 856 (6th Cir. 1984).

Degan was convicted of violating 18 U.S.C. § 1958(a), which provides as follows:

> Whoever travels in or causes another (including the intended victim) to travel in interstate or foreign commerce, or uses or causes another (including the intended victim) to use the mail or any facility in interstate or foreign commerce, with intent that a murder be committed in violation of the laws of any State or the United States as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value . . . shall be fined under this title or imprisoned for not more than ten years, or both; and if personal injury results, shall be fined under this title or imprisoned for not more than twenty years, or both; and if death results, shall be punished by death or

played before the jury. Consequently, Degan's argument lacks merit.

### III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** Degan's conviction.

directly answer the jury's question, but instead told the jury that it must find that Degan caused Noel to travel from Mississippi to Tennessee with the intent to have Noel kill his ex-wife. Degan did not object to this charge at trial. On appeal, Degan claims that, based on the district court's charge, the jury might have erroneously found the interstate element based on Noel's June 14 trip. By that time, Degan contends, Noel was a government agent allegedly incapable of establishing the jurisdictional element.

When a defendant fails to object to a jury instruction at trial, the instruction is reviewed for plain error. *See United States v. Sanderson*, 966 F.2d 184, 187 (6th Cir. 1992). "Reversal of a criminal conviction on the basis of plain error is an exceptional remedy, which we invoke only when it appears necessary to prevent a miscarriage of justice or to preserve the integrity and reputation of the judicial process." *United States v. Bustillo*, 789 F.2d 1364, 1367 (9th Cir. 1986).

In this case, the district court did nothing more than restate that the government must prove every element of the offense charged, including the element that Degan caused Noel to travel from Mississippi to Tennessee with the intent to commit a murder. As discussed above, the jury was properly allowed to consider Noel's June 14 trip in determining whether the government had met its burden with respect to the interstate element. In any event, Degan has failed to show a fundamental miscarriage of justice as a result of the district court's charge to the jury.

## C.    There is sufficient evidence in the record that Degan promised to pay Noel $5,000 to murder his ex-wife

Finally, Degan argues that the government did not present any evidence that he promised to pay anything of value to Noel for agreeing to murder his ex-wife. To the contrary, Noel testified that Degan had promised to pay Noel $5,000 if he would commit the murder. Noel's testimony was confirmed by Degan in the taped conversations that were

life imprisonment, or shall be fined not more than $250,000, or both.

In light of the statute, the district court charged the jury that the government must prove beyond a reasonable doubt that:

A.    Degan caused Jimmy Noel to travel in interstate commerce from Mississippi to Tennessee;

B.    Degan caused such travel with the intention that a murder be committed in violation of the laws of any state or of the United States; and

C.    As consideration for this murder there would be the receipt of or a promise to pay anything of pecuniary value.

The essence of Degan's argument is that Noel traveled from Picayune, Mississippi to Memphis, Tennessee on June 9, 1997 to attend a court proceeding, not to meet with Degan about killing his ex-wife. In support of this proposition, he cites *United States v. Myerson*, 18 F.3d 153 (2d Cir. 1994), where the Second Circuit affirmed the district court's dismissal of two travel fraud counts against the defendant because the victim's interstate travel had "nothing directly or remotely to do with the furtherance of the fraud." *Id*. at 164 (internal quotation marks omitted).

Degan's argument is unavailing, however, because "[t]he fact that travel is motivated by two or more purposes, some of which lie outside the ambit of the Travel Act, will not preclude conviction under the Act if the requisite . . . intent is also present." *United States v. Gooding*, 473 F.2d 425, 428 (5th Cir. 1973). In contrast to *Myerson*, there is sufficient evidence in the record to establish that at least one of the reasons that Noel came to Memphis on June 9, 1997 was to meet with Degan. Noel testified that on June 4, 1997, Degan asked him to travel to Memphis to discuss murdering Degan's ex-wife, and that he came to Memphis five days later for that purpose. At the time of that conversation, Degan knew that Noel was living in Mississippi. In fact, Degan sent Noel

$100 so that Noel would be able to make the trip on June 9. Consequently, a rational jury could have concluded that Degan caused Noel to come to Memphis on June 9, 1997 for the purpose of planning a murder-for-hire. The fact that the timing of the trip was motivated by two purposes does not alter this analysis. *See Gooding*, 473 F.2d at 428.

Degan also claims that Noel became a paid federal agent after Noel met with the FBI. He thus argues that he could not have caused Noel to travel from Mississippi to Tennessee on June 14, 1997 for an illegal purpose because this would be tantamount to allowing the government to create federal jurisdiction. Degan cites *United States v. Archer*, 486 F.2d 670 (2d Cir. 1973), for the proposition that federal jurisdiction cannot be manufactured by the government. He then cites several cases that stand for the proposition that one cannot conspire in violation of federal law if the only coconspirator is the government or its agent.

In addressing Degan's argument, it should first be pointed out that he was not charged with conspiracy, but rather with a substantive charge under 18 U.S.C. § 1958. Moreover, Noel testified that prior to his arrival in Memphis on June 9, 1997, Degan had asked him to commit the murder. Because Degan was the one who initiated the conversation about murdering his ex-wife, and asked Noel to do the killing with the knowledge that Noel lived in Mississippi, it is irrelevant that Noel was a government agent at the time of the June 14 trip. *See United States v. Smith*, 749 F.2d 1568, 1569-70 (11th Cir. 1985) (holding that because the government agent traveled in interstate commerce at the defendant's behest, the government did not improperly manufacture federal jurisdiction). Finally, it is undisputed that when Noel left Degan's presence on June 14, Degan thought that Noel had left to go kill his ex-wife. Based on this evidence, a rational jury could conclude that Degan had caused Noel to travel from Mississippi to Tennessee on June 14, 1997 in order to commit a murder.

**B. The district court did not err regarding its instructions to the jury**

In a related argument, Degan claims that the district court committed reversible error when it refused to issue the following proposed jury instruction:

> The court instructs the jury that one cannot "cause" a government agent to commit an illegal act. Since Mr. Noel was acting as a government agent, he could not have lawfully been "caused" to commit an illegal act. Therefore, you are to return a verdict of "not guilty."

A district court's denial of a proposed jury instruction "is reversible only if that instruction is (1) a correct statement of the law, (2) not substantially covered by the charge actually delivered to the jury, and (3) concerns a point so important in the trial that the failure to give it substantially impairs the defendant's defense." *United States v. Frost*, 125 F.3d 346, 372 (6th Cir. 1997) (quoting *United States v. Williams*, 952 F.2d 1504, 1512 (6th Cir. 1991)).

Degan's argument lacks merit because his proposed jury instruction did not accurately state the law. The federal murder-for-hire statute criminalizes those who *induce* others to travel in interstate commerce to commit murder, rather than actually "cause" others to commit an illegal act, as Degan's instruction states. In addition, the instruction presumes without qualification that Noel was a government agent, whereas he was clearly not a government agent when he first crossed the state line on June 9, 1997. Finally, the instruction's conclusion mandating that the jury return a verdict of "not guilty" was obviously prejudicial to the government. Because of these errors, the district court properly rejected Degan's proposed jury instruction.

Continuing his "jurisdictional" attack, Degan argues that the district court gave the jury an improper charge in response to the jury's question regarding whether the government must prove that Degan caused both trips (June 9 and June 14) to be made by Noel or only one of them. The district court did not