NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0164n.06

No. 19-2429

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
|  | ) | Mar 26, 2021 |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
|  | ) |  |
| v. | ) | ON APPEAL FROM THE |
|  | ) | UNITED STATES DISTRICT |
| GERRI AVERY, | ) | COURT FOR THE EASTERN |
|  | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellant. | ) |  |
|  | ) |  |
|  | ) |  |

BEFORE: BATCHELDER, GRIFFIN, and STRANCH, Circuit Judges

ALICE M. BATCHELDER, Circuit Judge. A jury convicted Gerri Avery of one count of violating 26 U.S.C. § 7212(a), Corrupt Endeavor to Obstruct or Impede the Due Administration of the Internal Revenue Laws, based on its finding that Avery made several misleading statements to Internal Revenue Service (IRS) investigators. The government argued that she intended to protect herself and Joe DeSanto, her longtime boss and friend, from assessment. Avery claims that the government presented insufficient evidence to support a conviction and that a class of evidence presented at trial was irrelevant or, if relevant, unduly misleading and prejudicial. The record and precedent mandate that we AFFIRM.

## I. Facts

### A. Integrated HCS Practice Management

This case begins with Integrated HCS Practice Management ("Integrated"), a now-defunct Michigan company that managed an affiliated medical practice. The company also handled

payroll for several other businesses. Integrated had multiple owners, including Edward Cespedes, Hussein Huraibi (who ran the affiliated medical practice), Yisroel Sigler, and Michael Weinberger. Cespedes was Integrated's nominal CEO, but worked only 10 to 15 hours per week on company matters.

Cespedes indicated that day-to-day operations at Integrated were run primarily by Joe DeSanto. Despite serving as Integrated's *de facto* COO, DeSanto had no formal title and did not live in Michigan. Nor was DeSanto listed on Integrated's licensing documents at the time relevant to this case.[1]

Defendant Avery was Integrated's office manager and DeSanto's personal assistant. She and DeSanto were also personal friends. Weinberger described Avery as "Joe's right hand" at Integrated. Another employee testified that Avery "acted as an operations manager and [employees] were basically told to take direction from her on behalf of" DeSanto. In this capacity, Avery would frequently answer billing questions and direct Integrated's accountants to pay certain bills. She, Cespedes, and Sigler were the three signatories on Integrated's payroll bank account, and she, DeSanto, and finance director Ron Waltz, were the three people who would typically request that checks be cut. It was Avery who signed most of Integrated's checks and she had online access to the company's bank accounts. She used her online access to make wire transfers, access QuickBooks records, and create accounting records. She also interviewed potential employees—though apparently did not make final employment decisions—and took part in discussions about payroll.

---

[1] The documents originally listed DeSanto as a member-manager, but a correction filed with the Michigan Department of Licensing and Regulatory Affairs removed him.

Integrated stopped paying its payroll taxes during the third quarter of 2013, a fact well known to Integrated's in-house employees. Cespedes and DeSanto decided to use Integrated's remaining funds, in Cespedes' words, "to continue the business," and "deal with the payroll taxes later." Integrated ceased operations in January 2014. The end of Integrated coincided with a lawsuit between Huraibi and the other owners.

## B. Perspective Solutions

Perspective Solutions formally opened in February 2014. Perspective's registration documents listed Weinberger as owner and Avery as its registered agent. The company was actually owned by DeSanto, who asked Weinberger to falsely list himself as the owner and member-manager on Perspective's legal documents. Perspective's leadership intended to sell a software platform.

The government alleged that Perspective was a "nominee entity" used to keep paying Integrated employees after Integrated's demise. At trial, the government established that many of Integrated's former employees seamlessly continued to work in the same roles, only now for Perspective, noticing no difference in operation beyond a name change. Multiple former Integrated employees testified that they received payments from Perspective for work performed for Integrated. Avery, like other Integrated employees, performed the same role at Perspective as she had at Integrated.

## C. The IRS Investigation into Integrated

IRS Revenue Officer Toni Allen began investigating Integrated's delinquent payroll taxes in April 2014. She sent letters to Cespedes and Avery (among other officers and employees) seeking information about the company. Her letter to Avery, dated July 24, 2014, suggested a

meeting time for the two and gave Avery a list of business records to bring to the meeting, including:

- Bank signature cards
- Canceled Checks
- Bank Statements
- [and] Meeting minutes.

The letter also requested "[a]ny other corporate records for the period(s) identified above."

On August 1, 2014, Avery sought guidance from Cespedes by email, writing:

I received [Allen's letter] in the mail on Saturday – I cannot make this meeting on the 19th – so I will reschedule – but my real question is – who will go with me to this meeting? We, as a company, do not have canceled checks – unless I request all of them from the time we started.

Cespedes responded that he had already spoken with Allen, that "[s]he's tough," and that he "would be happy to share [his] experience with [Avery]."

Avery left Allen a voicemail on August 13, 2014. The only record of the voicemail is Allen's note memorializing it, which she testified she made within hours of receiving the voicemail. The note reads:

I rec'd a VMM ["voicemail message"] from Gerri Avery regarding appointment on 8/19/14. Tp ["Taxpayer"] LM ["left a message"] that the date/time is inconvenient for her, she will not be attending.

Tp stated she has consulted with an attorney and her attorney will call me to reschedule an appointment where the both of them can attend. She also stated she knows I have been working with the President and I should also be looking at Hussein Harabi [sic] and Yisroel Sigler bfore [sic] looking at employees. She LM that they never received any cancelled [sic] checks, not sure how to get all of the other things.

She did not leave a call back number.[2]

---

[2] We define the abbreviations by how Allen read the note at trial.

Avery's attorney never followed up with Allen. Cespedes, in a letter sent to the IRS by his attorney, also suggested that Allen investigate Huraibi and Sigler. Cespedes later admitted to lying about Huraibi's involvement in Integrated's tax delinquency.

Allen completed her short and apparently cursory investigation, during which she appears not even to have spoken to several of Integrated's owners and managers, including DeSanto. She recommended that the IRS assess Cespedes and Avery, and the IRS assessed a "trust fund recovery penalty" against Avery totaling $216,701.99. The IRS assessed no penalty against DeSanto, despite his having run Integrated's day to day operations and having direct involvement in deciding not to pay the company's payroll taxes.

In early 2016, IRS Revenue Officer Lisa Patterson notified Avery that the IRS intended to begin enforcing the recovery penalty, including potentially levying on her income or garnishing her bank account. At that point, Avery hired attorney Neil Nusholtz to represent her. Nusholtz, based on his conversation with Avery, drafted and sent a letter to the IRS in March 2016 seeking reduction or abatement of the assessment. The letter, which included a memorandum of fact and argument signed by Avery under penalty of perjury, stated that "[Avery's] previous employer, Joe Desanto [sic] . . . had asked her to work on site, inasmuch as Mr. Desanto [sic] would not be involved in the day to day affairs of" Integrated, and repeatedly asserted that Avery was unaware of Integrated's finances and uninvolved in financial and managerial decisions. Avery sent a similar letter and second abatement request in November 2016.

In September 2017, Avery sought to settle the assessment, and made a down payment of $391 on the debt. Around the same time, Avery received a check for $391 from Magnalty LLC, a company owned by DeSanto's wife. The check's memo mentions "IHS" (Integrated), "IRS," and the "application fee." Avery signed the front of the check herself.

## II. Procedural Background

The Department of Justice Tax Division indicted DeSanto, Cespedes, and Avery in February 2018. DeSanto and Cespedes were each indicted on three counts for failing to collect, truthfully account for, and pay payroll tax. Both pleaded guilty. The government charged Avery with one count of Corrupt Endeavor to Obstruct or Impede the Due Administration of the Internal Revenue Laws under 26 U.S.C. § 7212(a). The indictment alleged that Avery made four types of false statements to the IRS, but for trial the government narrowed its allegations to two false statements in two subject areas: that Avery downplayed DeSanto's role with Integrated and that Avery downplayed her personal role with Integrated and her knowledge of and access to Integrated's finances and financial records.

At the close of the government's case-in-chief, Avery moved for a Rule 29 judgment of acquittal. The district court took the motion under advisement, Avery rested the next day without presenting a defense, and the district court denied the motion. The jury found Avery guilty, and the district court denied Avery's renewed motion for acquittal. The district court also denied Avery's motion for a new trial. The court gave Avery a below-guidelines sentence of two years' probation and ordered her to pay restitution of $167,000 (based on the amount of the assessment remaining) jointly and severally with DeSanto and Cespedes.

## III. Analysis

Avery challenges her conviction on two grounds: insufficiency of the evidence and admissibility of certain evidence.[3]

---

[3] We find it puzzling that Avery did not challenge the substantive reasonableness of the restitution portion of her sentence. At oral argument, Avery's attorney pointed out that Avery's actions alone were not responsible for any of the IRS's losses, and neither caused the IRS a pecuniary loss nor met any other provision of 18 U.S.C. § 3663A(c) that would mandate restitution. Nor did the government argue that Avery was responsible for Integrated's falling behind on its taxes; rather, it made clear that its only claim against Avery was that she obstructed or impeded the IRS

**A. Sufficiency of the Evidence**

We review de novo the denial of a Rule 29 motion for a judgment of acquittal on grounds of insufficiency of the evidence, determining "'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Howard*, 621 F.3d 433, 459 (6th Cir. 2010 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

As Avery acknowledges, "[a] defendant challenging the sufficiency of the evidence bears a very heavy burden." *United States v. Prince*, 214 F.3d 740, 746 (6th Cir. 2000) (internal quotation marks omitted). "We will reverse a judgment for insufficient evidence [only] if, after viewing the record as a whole, we conclude that the judgment is not supported by substantial and competent evidence." *Id.*

Avery argues that her statements that the government claims violate Section 7212(a) have multiple plausible interpretations, so no rational juror could believe the government's interpretation beyond a reasonable doubt. But "the mere fact that Defendant is able to offer the alternative theory of innocence does not automatically render [] evidence insufficient." *United States v. Nechovski*, 372 F. App'x 568, 574 (6th Cir. 2010) (citing *United States v. Degan*, 229 F.3d 553, 556 (6th Cir. 2000)). "It is not necessary that circumstantial evidence remove every reasonable hypothesis except that of guilt." *United States v. Stone*, 748 F.2d 361, 363 (6th Cir. 1984). Avery's argument that her comments are open to competing interpretations, and therefore cannot sustain a guilty verdict, is true only if no rational juror could have found the government's

---

investigation. And the record does not suggest that Avery's obstructions prevented the IRS from pursuing the delinquent taxes; indeed, the IRS issued assessments for them and has begun collecting on those assessments.

interpretation of the facts established at trial correct.  To hold otherwise would "turn[] the *Jackson* standard on its head."  *York v. Tate*, 858 F.2d 322, 330 (6th Cir. 1988).

*1.  The Charge*

The government charged Avery under 26 U.S.C. § 7212(a), which includes two forms of obstruction.  The first, the "Officer Clause," criminalizes "corruptly or by force or threats of force (including any threatening letter or communication) endeavor[ing] to intimidate or impede any officer or employee of the United States acting in an official capacity under" the Internal Revenue laws.  *Marinello v. United States*, 138 S. Ct. 1101, 1104–05 (2018) (quoting 26 U.S.C. § 7212(a)) (alteration in original and emphasis omitted).  The second, the "Omnibus Clause," "forbids corruptly or by force or threats of force (including any threatening letter or communication) obstruct[ing] or imped[ing], or endeavor[ing] to obstruct or impede, the due administration of [the Internal Revenue Code]."  *Id.* at 1105 (quoting 26 U.S.C. § 7212(a)) (alterations in original and emphasis omitted).  The government prosecuted Avery under the Omnibus Clause.

The government had to prove three elements: that Avery (1) corruptly (2) endeavored to obstruct or impede (3) a particular administrative proceeding of the IRS.  26 U.S.C. § 7212(a); *Marinello*, 138 S. Ct. at 1105.  "'[T]o act corruptly means to act with the intent to secure an unlawful benefit either for oneself or another.'"  *United States v. Miner*, 774 F.3d 336, 343 (6th Cir. 2014) (quoting *United States v. McBride*, 362 F.3d 360, 372 (6th Cir. 2004)).  A person "endeavoring to obstruct or impede" must intend to obstruct or impede an IRS investigation, but need not succeed; even an endeavor "doomed to failure from the start" creates culpability.  *United States v. Tackett*, 113 F.3d 603, 611 (6th Cir. 1997) (discussing "endeavor" in the context of

obstruction of justice under 18 U.S.C. § 1503).[4]  "The statutory words 'obstruct or impede' are broad.  They can refer to anything that 'block[s],' 'make[s] difficult,' or 'hinder[s].'"  *Marinello*, 138 S. Ct. at 1106 (alterations in original).  And there must be "a 'nexus' between the defendant's conduct and a particular administrative proceeding, such as an investigation."  *Id.* at 1109.  The "nexus requires a 'relationship in time, causation, or logic with the [administrative] proceeding.'"  *Id.* (alterations in original) (quoting *United States v. Aguilar*, 515 U.S. 593, 599 (1995)).  "In the Sixth Circuit, the defendant must be aware that the IRS action was pending at the time of [her] obstructive conduct."  *United States v. Rankin*, 929 F.3d 399, 405 (6th Cir. 2019).[5]

Practically, the Omnibus Clause criminalizes conduct without requiring a specific outcome.  The government did not have to prove that Avery successfully obstructed or impeded an IRS investigation; only that she corruptly tried to do so.  The government points to two communications which it claims demonstrate that Avery intended to obstruct or impede the IRS investigation into Integrated: the August 2014 voicemail Avery left for Allen and the March 2016 letter signed by Avery and sent by Nusholtz to the IRS seeking an abatement.  The voicemail contained two allegedly obstructive comments: (1) that Allen should "be looking at Hussein [Huraibi] and Yisroel Sigler [before] looking at employees" and that Avery was "not sure how to get" the records requested by Allen.  The letter also contains two allegedly obstructive items: (1)

[4] Both the Supreme Court and this circuit use caselaw interpreting 18 U.S.C. § 1503 (obstruction of justice) to interpret 26 U.S.C. § 7212(a).  *See Marinello*, 138 S. Ct. at 1105–06; *United States v. Kassouf*, 144 F.3d 952, 955–56 (6th Cir. 1998).

[5] Avery suggests, based on the district court's jury instructions in this case, that the government also had to prove absence of good faith.  The district court instructed the jury that "[t]he good faith of the defendant is a complete defense to the charge here because good faith on the part of the defendant is simply inconsistent with acting corruptly."  Avery raised good faith in her briefing in a perfunctory manner—writing only that "[t]he government was also required to prove that Ms. Avery did not act in good faith," and quoting the jury instruction.  "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."  *United States v. Bradley*, 917 F.3d 493, 509 (6th Cir. 2019) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997)).  We consider this argument forfeited but note that the instruction says good faith is a *defense* to the corruption element, not an element itself.

that DeSanto was not "involved in the day to day affairs of [Integrated]" and (2) argument from the letter that the government alleges downplays Avery's knowledge of Integrated's finances. We must affirm if the government sufficiently proved that any one of the four constituted an attempt to obstruct.

There can be no serious claim that the government failed to draw a nexus between Avery's actions and a specific IRS investigation—Avery left the voicemail in response to an IRS investigator's letter seeking information about Integrated's delinquent taxes, and Avery's attorney sent the March 2016 letter in response to the IRS's moving to collect from Avery. *See Miner*, 774 F.3d at 347 (holding that a defendant's general awareness of pending IRS investigations sufficiently meets the nexus element). This leaves two elements at issue: whether Avery acted corruptly, and whether Avery endeavored to obstruct or impede the investigation.

As the government needed to prove only that one of the four specified items was an attempted obstruction, we focus on its strongest: that Avery undersold her involvement with and knowledge of Integrated's finances in her attorney-sent letter to the IRS.

*2. Avery's Letter*

The letter sent by Avery's former attorney, Nusholtz, to the IRS on her behalf on March 22, 2016, sought, in Nusholtz's words, "to have the trust fund recovery penalty assessment either reduced or wiped away so that she wouldn't owe money." Though Nusholtz wrote the letter, his only knowledge of the facts it contained came directly from Avery. Avery reviewed the letter for correctness and may have made minor edits. She signed the letter under penalty of perjury, declaring its truthfulness and completeness.

The government contended that several paragraphs of the letter obstructively understated Avery's involvement with and knowledge of Integrated's finances. These paragraphs say:

> When the company was initially formed, and before operations commenced, Mr. Desanto [sic] put the taxpayer on the checking account. Thereafter she didn't have an office, she used her own cell phone, and she did miscellaneous tasks during the hours of 9 am to 5 pm. Periodically, she would be presented with checks to sign, which she did. She was not an officer or owner and had no control over the payment of bills. The taxpayer was not involved in the hiring or firing of employees nor was she involved in any financial decisions.
>
> . . .
>
> The taxpayer had not participated in any discussions about which bills would be paid. All she knows is that she would be handed checks by someone from the accounting department from time to time for her to sign and she had nothing to do with the overall finances of the company.
>
> . . .
>
> The taxpayer did not have and did not exercise any financial control over [Integrated]. She was not a manager or an owner of the company, she did not work in the accounting department, she did not participate in financial decisions and she did not decide which creditors would be paid. She does not specifically recall when she learned taxes were due because the payment of taxes or the payment of any particular creditor was not part of her job.

Trial testimony contradicted several claims from these paragraphs. We focus on three: Avery's claim that she "had no control over the payment of bills" (which we group with her later claims that "she was [not] involved in any financial decisions" and that "she did not participate in financial decisions"), her claim that she "had not participated in any discussions about which bills would be paid," and her claim that "the payment of taxes or the payment of any particular creditor was not part of her job."

We start with the letter's claim that Avery had no control over the payment of bills. The government presented at trial numerous examples of her direct involvement in paying bills. Avery told finance director Waltz in an email that "I do really need to pay Magnalty today . . . I get it if we can't but if we can it would be great." In a different email, Avery informed the accounting

department that she was "wiring the amount owed by Integrated for the attached amex [credit card bill]." In another email, Avery instructed accountant Robin Surhigh—who ran accounts payable—to "issue payment of 6500 for Proactive apply to outstanding invoices." Surhigh testified that Avery was often the person instructing her to pay bills. And, in an email to DeSanto, Surhigh, and Waltz, Avery wrote: "We need to begin paying Magnalty LLC from November 5, $1,635.00 per pay period. I believe we need to do this as a 1099 pay instead of through payroll – if we do it through payroll we will need to adjust for taxes." Avery followed up by saying that she would execute whatever decision Surhigh and Waltz made, then later told Waltz to "just cut a check."

Although Waltz testified that Avery was passing along instructions from her bosses, the government presented evidence sufficient for a rational juror to believe that Avery's claim that she had no control over the payment of bills was a lie. A rational juror could infer that Avery lied to minimize her role with Integrated in order to avoid or minimize her assessment, satisfying the corruption element.

And even if we disregard the *Jackson* standard and credit Avery's argument that she was merely passing along instructions and not exercising control over the payment of bills, as her counsel requests, these emails show that Avery participated in discussions about which bills Integrated would pay—something the letter claimed that she did not do. A rational juror could look at these emails and infer beyond a reasonable doubt that Avery either instructed Nusholtz to lie—or lied to Nusholtz—and adopted those lies about her involvement in discussions regarding Integrated's payment of bills in an effort to diminish her role at Integrated to the IRS to avoid paying her assessment. This satisfies both of the elements at issue.

Finally, evidence presented at trial shows Avery's involvement in the payment of taxes. In addition to the email regarding payment to Magnalty, in which Avery discussed the tax implications of payment, the government introduced an email sent by Avery to Cespedes saying:

> The non-payment of these unemployment taxes is going to be a real problem for us now. I am trying to get Paychex to send me all paystubs for everyone thru the last run date that they did for us. . . . I am hoping we can supply everyone with their paystubs because then it shows that they actually paid into unemployment and will be able to draw, buying us some time to get caught up.

This evidence is also sufficient to permit a reasonable juror to find beyond a reasonable doubt that Avery's letter misrepresented her involvement in the payment of taxes in an effort to avoid having to pay the IRS' assessment against her. This, again, satisfies both at-issue elements.

Therefore, the government presented sufficient evidence for a rational juror to find beyond a reasonable doubt that Avery corruptly endeavored to impede or obstruct enforcement of the tax code by making and adopting false statements in the March 2016 letter that minimized her knowledge of Integrated's finances in an attempt to avoid paying the IRS' assessment against her.

## B. Evidentiary Challenge

Avery raises both a Rule 401 relevance argument and a Rule 403 balancing argument on the admission of evidence regarding Perspective. We review the district court's evidentiary decisions for abuse of discretion. *United States v. Whittington*, 455 F.3d 736, 738 (6th Cir. 2006).

### 1. Rule 401

"Evidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401(a). The government's evidence regarding Perspective dealt with Avery's continued access to financial records of what the government claimed was a nominee entity of Integrated. The district court actively tried to enforce a line between allowing evidence regarding Perspective that "might shed light on [Avery's] role at Integrated and what records, documents, et cetera she would know about or have access to or

maybe control over," and excluding evidence "that seem[s] to be more a charge about the operation of Perspective than the dealings at Integrated." Avery does not explain why specific pieces of admitted evidence were irrelevant; she instead claims that the government's Perspective evidence was, as a class, irrelevant. She is incorrect. The government established that Avery's work at Perspective was simply a continuation of her work at Integrated, which made it more probable that she had access to Integrated's bank records and canceled checks, contrary to the voicemail message she left for Allen claiming that she did not. Therefore, the district court did not abuse its discretion under Rule 401 by admitting evidence of Avery's work with Perspective.

*2. Rule 403*

A "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Avery points to two potential Rule 403 problems: misleading the jury and unfair prejudice.[6]

*a. Misleading the Jury*

Avery first argues that the government's introduction of the Perspective evidence misled the jury into thinking that Avery "was involved [in] a massive conspiracy, involving multiple entities and she was directly involved in moving money. The government essentially suggested through all of these documents that Avery was a major player and therefore her dealings at Perspective should inform the jury's view of her authority at Integrated." But this evidence was highly probative of whether Avery could or could not access documents that she claimed in the voicemail not to have. Avery did not make any specific arguments pointing to examples of the

---

[6] Avery argues that the government misled the jury in the context of Rule 401, but her argument raises a Rule 403 claim.

court's admitting specific pieces of evidence that misled the jury; she instead broadly claims that "Perspective documents were fundamentally irrelevant." We disagree, and find that the district court did not abuse its discretion by admitting evidence that might mislead the jury.

### b. *Unfair Prejudice*

"The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997). Avery argues that the government unfairly prejudiced her reputation by painting her as "arguably complicit in DeSanto's musical chairs of businesses." But Avery's involvement in DeSanto's businesses is directly relevant to her alleged motive. The government argued that Avery obstructed the IRS in part to protect DeSanto—her boss and personal friend—from assessment. Her involvement with DeSanto speaks to whether and why she would protect him. This evidence speaks directly to whether Avery acted corruptly. Therefore, the district court did not abuse its discretion by admitting evidence that might unfairly prejudice the jury against Avery.

## IV. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.